SANFORD WITTELS & HEISLER, LLP
     David W. Sanford (DC Bar 457933)
1666 Connecticut Ave NW, Suite 310
Washington, DC 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776
dsanford@nydclaw.com

SANFORD WITTELS & HEISLER, LLP
     Jeremy Heisler (NY Bar 1653484)
     Steven L. Wittels (NY Bar 2004635)
     Janette Wipper (DC Bar 467313)
1350 Avenue of the Americas, Suite 3100
New York, NY 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948
jheisler@nydclaw.com

CHAPIN WHEELER LLP
     Edward D. Chapin (SBN: 053287)
     Jill M. Sullivan, Esq. (SBN: 185757)
550 West "C" Street, Suite 2000
San Diego, California  92101
Tel:   (619) 241-4810
Fax:  (619) 955-5318

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MEZA and ALEXANDER GONZALEZ, individually and on behalf of all others similarly situated, | ) <br> ) CASE NO. 09-CV-1798 MMA JLS <br> ) |
| Plaintiffs, | ) **AMENDED CLASS ACTION** <br> ) **COMPLAINT UNDER FLSA** |
| v. | ) **AND CAL. LABOR LAW** <br> ) |
| UNITED PARCEL SERVICE, INC. and UPS GROUND FREIGHT, INC. d/b/a UPS FREIGHT, | ) Judge:    Hon. Janis L. Sammartino <br> ) Dept:    6 <br> ) Complaint Filed: 8/19/09 |
| Defendants. | ) Trial Date: TBD <br> ) |

1.  Plaintiffs Laura Meza and Alexander Gonzalez, on behalf of themselves individually and on behalf of all others similarly situated, bring this case for violations of the federal Fair Labor Standards Act of 1938 ("FLSA") and corresponding California wage and hour laws.  This Court has subject matter jurisdiction over the FLSA action pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs hereby complain and allege as follows:

## I. NATURE OF THE ACTION

2.  An employer's obligation to pay its employees overtime wages is more than a matter of private concern between the parties.  That obligation rests upon a compelling policy judgment that members of a modern, humane society are entitled to work a livable number of hours at a livable wage.  The statutes and regulations compelling employers to pay overtime were designed not only to benefit individual workers but also to serve a fundamental societal goal: reducing unemployment by giving the employer a disincentive to concentrate work in a few overburdened hands and an incentive to instead hire additional employees. Especially in today's economic climate, the importance of spreading available work to reduce unemployment cannot be overestimated.

3.  This collective and class action lawsuit arises from an ongoing wrongful scheme by the United Parcel Service, Inc. and UPS Freight (hereafter "Defendants" and the "Company" collectively and "UPS" and "UPS Freight"

individually), world leaders in package delivery services, to trample on those policies. Defendants wrongfully deny their Account Managers overtime benefits due to them under the FLSA and corresponding California laws.

4. The term "Account Manager" means all persons who have been, are, or in the future will be employed by the Defendants in a position as an Account Manager, including but not limited to (i) employees whose title is or was referred to as Account Manager and (ii) employees who performed substantially similar work to employees with the title Account Manager. Discovery may reveal additional titles and employees that should be included in the Plaintiff Class.

5. Defendants have routinely and systematically denied statutorily-mandated overtime compensation to Account Managers like Plaintiffs Laura Meza and Alexander Gonzalez and others similarly situated by deliberately and wrongfully misclassifying them as exempt from overtime as outside salespersons and/or bona fide administrative employees.

6. To establish that an employee is an exempt outside salesperson, the employer must "plainly and unmistakably" show that the employee's primary duty is **making sales** or **obtaining orders or contracts** for the provision of services or the use of facilities. Account Managers employed by Defendants neither make sales nor obtain orders or contracts and so do not fall within the outside sales exemption. Instead, Plaintiffs and the Class Members go door-to-door disseminating Company-provided promotional materials.

7. To establish that an employee is exempt from overtime due to her employment in a bona fide administrative capacity, the employer must "plainly and unmistakably" show that the employee performs work directly related to the company's management policies or general business operations and, in so doing, customarily and regularly exercises discretion and independent judgment on matters of significance.  Account Managers never engage in such high-level managerial-type work; their sole responsibility is to deliver the Company's pre-scripted promotional messages to local businesses in a particular area. Accordingly, Class Members have no managerial or supervisory responsibilities, and no influence over Defendants' general business operations, including their marketing strategies, nor do they exercise discretion on any matters of significance to the Company.  In their limited door-to-door promotional activities, they are not permitted to deviate from the messages and targets set by corporate management.

8. Therefore, under both the FLSA and similar California statutes, Defendants' Account Managers are non-exempt and entitled to recover the overtime payments that the Company willfully denied them.

## II. JURISDICTION AND VENUE

9.  This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action alleges violations of a federal statute, the overtime and record-keeping requirements of the FLSA – codified at 29 U.S.C.

§§ 211(c) and 216(b). The Court has supplemental jurisdiction over claims arising under similar California statutes and regulations pursuant to 28 U.S.C. § 1367.

10. Alternatively, the Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the aggregated amount in controversy exceeds $5 million, there are at least 100 class members, and the parties are citizens of different states: Plaintiffs are citizens of California, whereas Defendant UPS is incorporated in Delaware with its principal place of business in Atlanta, Georgia, and Defendant UPS Freight is incorporated in Virginia with it principal place of business in Richmond, Virginia.

11. This Court has personal jurisdiction over Defendants because at all times relevant to this action, UPS and UPS Freight have conducted substantial and continuous commercial activities in the State of California, including in this District.

12. Venue is proper to this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District, and, pursuant to 28 U.S.C. § 1391(c), because this Court has personal jurisdiction over the corporate Defendants.

## III. THE PARTIES

13. Plaintiff Laura Meza ("Plaintiff Meza") is a resident of Whittier, California.  Plaintiff Meza has worked for Defendants UPS and UPS Freight since approximately 2005, when the Company acquired her previous employer,

Overnite Transportation ("OT"), a provider of regional, interregional, and long-haul less-than-truckload ("LTL") services.  At the time of its acquisition, Plaintiff Meza had worked for OT since 1998. She has worked as a UPS Account Manager in Fullerton, California since January 2008.  From February 2009 to August 2009, Plaintiff Meza was on medical leave due, in part, to the stress of the long hours of work at UPS.

14. Plaintiff Alexander Gonzalez ("Plaintiff Gonzalez") is a resident of Pico Rivera, California.  Plaintiff Gonzalez was employed by Defendants UPS and UPS Freight from approximately 2005 to November 2007.  Prior to his employment with Defendants, Plaintiff Gonzalez had worked for OT since November 1995.  Plaintiff Gonzalez worked as a UPS Account Manager from December 2006 to November 2007, when he was terminated for overextending his medical leave.

15. Defendant UPS is a package delivery corporation that operates and at all relevant times has engaged in business in California and throughout the United States.  UPS is a Delaware corporation with its principal place of business in Atlanta, Georgia.  UPS is the world's largest package delivery company, transporting 3.92 billion packages worldwide each year; each day, 7.9 million customers (including both shippers and receivers) use its services.  UPS employs 426,000 employees in over 200 countries and territories worldwide, including over 345,000 in the United States.

16. Defendant UPS Freight is a subsidiary of Defendant UPS that operates and at all relevant times has engaged in business in California and throughout the United States.  UPS Freight is a Virginia corporation with its principal place of business in Richmond, Virginia.  UPS Freight provides LTL and truckload freight transportation services throughout North America, operating approximately 6,700 tractors and 22,100 trailers from over 200 terminals.  In 2002, UPS Freight employed over 14,000 employees.

17. Defendant UPS' business operations in California alone are massive in scale.  A substantial proportion of the Company's customers is located in California, as well as one of its seven U.S. air hubs, and it has hundreds of business locations and facilities throughout the state. Upon information and belief, UPS employs thousands of employees in California.

18. Defendant UPS Freight also conducts a significant portion of its business in California.  Thirty-four of UPS Freight's terminals are located in California. Upon information and belief, UPS Freight employs thousands of employees in California.

19. Upon information and belief, Defendants UPS and UPS Freight are joint employers of Plaintiffs Meza and Gonzalez and other UPS Freight Account Managers. As the parent corporation of UPS Freight, UPS exercises general control over the UPS Freight subsidiary's employees.  Upon information and

belief, UPS' employees made or assisted in making the overtime and wage payment decisions at issue.

## IV. FACTUAL BACKGROUND

20. Plaintiffs Meza and Gonzalez regularly and consistently worked sixty (60) hour workweeks in their capacity as Account Managers.  Though they typically worked in excess of forty (40) hours per week and eight (8) hours per day, they were never compensated for their overtime hours.  Plaintiffs worked full days, often from approximately 6:00 in the morning until 8:00 at night; Defendants did not track the number of hours that their Account Managers worked.  During these long hours, Account Managers were expected to constantly be working, be it by meeting with customers, checking emails and voicemails, or responding to their managers' concerns.  At no time during these long workdays did Defendants allow their employees to take meal breaks or other rest breaks.

21. Upon information and belief, other UPS and UPS Freight Account Managers have similar schedules to Plaintiffs Meza and Gonzalez.  Class Members frequently, if not constantly, work well in excess of forty (40) hours per week and typically work sixty (60) hours per week.  Upon information and belief, Class Member Account Managers are also expected to be continually on duty and responsive to their customers and managers.  Upon information and belief, Class Members' compensation structure, similar to that of Plaintiffs Meza and Gonzalez, does not account for overtime hours worked.

22. Plaintiffs' primary responsibility as Account Managers is and has been going door-to-door to businesses in their respective territories – for Plaintiff Meza, Anaheim, Placentia, Orange, parts of Fullerton, and parts of La Brea; and for Plaintiff Gonzalez, Costa Mesa, Santa Anna, Garden Grove, and Huntington Beach – to promote Defendants' portfolio of freight delivery services to both current and potential customers.

23. UPS and UPS Freight management dictates the precise content, language, and order of the "sales" pitch that Account Managers like Plaintiffs Meza and Gonzalez must make to the customers on their routes.  In Plaintiff Meza's current employment as an Account Manager, and in Plaintiff Gonzalez's former employment as an Account Manager, Plaintiffs have followed and continue to follow the same process.  First, Plaintiffs must ask the customer what type of items he or she ships.  If the customer ships ground items, Plaintiffs are required to direct the customer to a UPS ground representative, since they are only permitted to discuss UPS' freight services.  If the customer ships freight items, Plaintiffs then must ask which company he or she is currently using.  If the customer is shipping with a competitor, Plaintiffs must deliver the line: "How would you like to become a part of the UPS family?"  At this point, Plaintiffs are required to give the customer a portfolio provided by UPS, which promotes the Company's speed, technology, information, coverage, and reliability.  Plaintiffs have no input into the content of the portfolio they present to customers.

24. Only after delivering this scripted pitch are Plaintiffs permitted to discuss pricing.  Plaintiffs are forbidden from giving the customer any initial indication of what kind of discount UPS might offer.   Plaintiffs must first request the customer's invoices or freight bills from other companies and then have to calculate a discount that would save the customer approximately two or three dollars per shipment. Plaintiffs must then submit their calculation to a UPS pricing analyst, who must approve of their proposed discount before they can submit it to the customer.  Finally, Plaintiffs can give the pricing analyst's Statement of Approved Pricing ("SOAP") to the customer.

25. The Statement of Approved Pricing that Plaintiffs distribute entitles potential customers to receive certain discounts if they decide to ship with UPS, but the documents do not obligate the customers to use UPS services. As these documents specify in written disclosures, and as Plaintiffs explain to their customers, they are **not** legally binding contracts.  Plaintiffs never execute any legally-binding contracts with customers, nor do they sell anything to the customers upon whom they call.

26. After Plaintiffs provide potential customers with the SOAP, these potential customers are instructed to initiate shipments either by calling corporate customer service to schedule a pickup or by entering the pickup into an electronic program known as WorldShip that the Company provides to its customers.   Although Account Managers sometimes walk customers through the WorldShip program,

or aid them in scheduling their first shipments, they do so only to promote the customer's continued relationship with UPS, and not to complete an actual sale.

27. Even though Defendants UPS and UPS Freight classify the Account Manager position as a sales role, Defendants do not recruit their Account Managers on the basis of prior sales experience or abilities.  Prior to assuming their Account Manager roles with the Company, Plaintiffs had both held operations positions within both Defendants and OT.   Neither Plaintiff had previously worked in the sales industry.  Instead, both Plaintiffs were selected for the Account Manager role on the basis of their knowledge of Defendants' products and services and their experience working on the operations side of the Company.   In fact, when Ms. Meza specifically informed Defendants' management during her interview for the Account Manager role that she did not have any sales experience, she was told not to worry.   Similarly, Defendants' managers who interviewed Plaintiff Gonzalez were unconcerned that he lacked a sales background.

28. Throughout their employment with Defendants, Plaintiffs have never earned $100,000 or more in a single year.   As a current Account Manager, Plaintiff Meza receives an annual salary of $51,000, plus a quarterly bonus based on whether she meets goals set by her supervisor.   Plaintiff Gonzalez earned approximately $56,000 total per year during his employment as an Account Manager.   Both Plaintiffs obtained and continued to obtain the majority of their

compensation from base salary, and not from quarterly bonuses.  In fact, although Plaintiff Gonzalez met his goals every quarter, he only averaged a quarterly bonus of $800.

29. Account Managers do not actually manage any employee of UPS or UPS Freight or any aspect of Defendants' business operations.  Although Account Managers correspond with UPS and UPS Freight drivers to ensure that their customers' shipments are being picked up and delivered on time, Account Managers have no authority to hire, fire, or discipline drivers or any other UPS or UPS Freight employees.   Further, while Account Managers sometimes disseminate UPS and UPS Freight promotional materials, including fliers for particular services, they have no input into the information contained within these materials.

30. As Account Managers, Plaintiffs routinely have worked and continue to work approximately sixty (60) hours each week.  On a typical day as a current Account Manager, Plaintiff Meza arrives in Defendants' office at 6:00 a.m., where she is expected to print and review the daily manifest reports that Defendants issue each morning, respond promptly to any emails sent from her supervisors, and address any customer questions – a lengthy process because Account Managers are required to run virtually all questions by Defendants' customer service.  Then, from 8:30 a.m. to approximately 5:00 p.m., Plaintiff Meza is required to work in the field, delivering the pitch described above to a

minimum of seven customers each day.  Finally, after Plaintiff Meza returns home in the evening, she must resume work, because Account Managers are expected to continue responding to emails from their supervisors and customers.

31. In addition to these long workweeks, Plaintiff Meza is routinely expected to work on weekends, vacations, and sick days.  Each weekend, Plaintiff Meza spends approximately four to five hours responding via email or telephone to questions or concerns raised by her supervisor or by customers.  Plaintiff Meza routinely has her sick days and vacation days cut short by a supervisor who has required her to use those days to complete work-related paperwork and respond to customer emails and phone calls.

32. Similarly, when employed as an Account Manager, Plaintiff Gonzalez began his workday as soon as he woke up.  He would check progress reports from the previous nights, check and respond to voice mails and emails, and ensure that customers' orders were shipped.  On a typical day as an Account Manager, Plaintiff Gonzalez arrived in the office at approximately 8:30 a.m. and was on the road to meet with customers by 9:00 – 9:30 a.m.  After meeting with clients and filling out paperwork non-stop until 5:30 p.m., Gonzalez returned home and worked for approximately three (3) more hours.  He generally worked fifty-five (55) to sixty (60) hours per week.

33. The other UPS and UPS Freight Account Managers perform similar duties to Plaintiffs, and, upon information and belief, are also required to work

approximately sixty (60) hours each week and to also work on weekends, holidays, and sick days.

34. The Account Managers' lengthy days are compounded by the fact that Defendants do not provide them with full and uninterrupted meal periods of one half-hour following each five hours of work, as required by California Labor Code §§ 226.7 and  512 and Wage Order No. 4-2001.  Account Managers are expected to continue working through the time during which they take their lunches either by checking emails and voice mails that have accumulated throughout the day or by taking prospective or current customers out to lunch in order to further promote the Company's services.  Account Managers who fail to use their lunch time for business purposes face discipline from their supervisors. For instance, in April 2007, Plaintiff Gonzalez and other Account Managers in his terminal were reprimanded by their Area Sales Manager for not using the money Defendants had allocated for Account Manager lunches with clients.

35. In addition, Defendants have failed and continue to fail to provide full and uninterrupted paid off-duty rest periods of ten minutes following each four hours of work, as required by California Labor Code §§ 226.7 and Wage Order no. 4-2001.

36. Throughout their long days, Account Managers are also subject to constant supervision by UPS and UPS Freight.  Account Managers are required to submit daily and weekly reports through UPS software regarding new and potential

customers.  During his employment as an Account Manager, Plaintiff Gonzalez was expected to acquire one new customer per week and also to generate a list of ten to twelve potential customers per week.  In addition, all information regarding customers that Plaintiff Gonzalez visited each day had to be entered into Defendants' software.

37. Upon information and belief, although Plaintiffs and the other Account Managers have spent and continue to spend up to four hours per day working beyond their normal hours of 8:30 to 4:30, UPS and UPS Freight do not maintain a time clock or any other system to monitor the amount of hours these Account Managers work each day, despite the fact that UPS and UPS Freight management are aware of the long hours maintained by their Account Managers.  Defendants thus fail to make, keep, and preserve the accurate time records required by California Labor Code §§ 226 and 1174.

38. In addition, Defendants have not furnished Plaintiffs and other Account Managers with timely itemized wage statements accurately showing the total hours worked and applicable hourly rates by each such Account Manager, as required by California Labor Code § 226.  The Account Managers do not fall within any exemption to the wage statement requirements of the California Labor Code and applicable wage orders.

39. Defendants have further failed to keep payroll records showing the hours worked daily by Plaintiffs and the other Account Managers, as well as the

applicable hourly rates, as required by California Labor Code §§ 1174 and 1174.5 and Wage Order No. 4-2001.

40. As a result of Defendants' failure to pay Plaintiffs Meza and Gonzalez and the other Account Managers overtime, Defendants have violated the Unfair Competition Law, Business and Professions Code § 17200 *et seq*. ("UCL") by reaping unfair benefits and illegal profits.  Specifically, Account Managers locate new business by delivering the pitch prescribed by UPS and UPS Freight and must also work to maintain these customers' relationship with UPS and UPS Freight by fielding constant customer service inquiries that consume hours of their time beyond the eight hours they spend in the field each day, without receiving any overtime compensation for this time.

41. Finally, although Plaintiff Gonzalez's separation from employment with Defendants occurred in November 2007, Defendants have failed and continue to fail to pay Plaintiff Gonzalez the unpaid wages and overtime due.  Upon information and belief, UPS and UPS Freight have also failed to pay all other Account Managers the overtime pay they are owed upon their separation from employment with Defendants, as required by California Labor Code §§ 201 and 202.

## V. COLLECTIVE ACTION ALLEGATIONS

42. Plaintiffs bring all federal causes of action as an opt-in collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all persons who

worked for UPS and UPS Freight as Account Managers (as defined above) at any time from three years prior to the filing of the original Complaint to entry of judgment in this case.  For purposes related to this action, including notice, the names and addresses of Account Managers are readily available from Defendants.

43. At all relevant times, Plaintiffs and the other Account Managers are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to UPS' and UPS Freight's common policies of: a) willfully failing and refusing to pay them time and a half rates for work in excess of forty (40) hours per week, as required by 29 U.S.C. § 207, and b) willfully misclassifying them as exempt from overtime compensation under 29 U.S.C. § 213, even though Defendants knew or should have known that Account Managers were not exempt.

## VI.  CLASS ACTION ALLEGATIONS

44. Plaintiffs bring all causes of action arising under California state law as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek relief on behalf of a class of all Account Managers employed by UPS and UPS Freight at any time from four years prior to the filing of the original Complaint to entry of judgment in this case.  This controversy meets all prerequisites for class certification under Rule 23.

45. The proposed Class is so numerous that joinder of all the members of the Class is impracticable.  While the precise number of Class Members has not been

determined at this time, upon information and belief, hundreds of people are or have been employed by the Defendants as Account Managers in California within the class period.

46. There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

a) Whether UPS and UPS Freight have violated and continue to violate California Labor Code § 510 and I.W.C. Wage Order No. 4-2001 by failing to pay overtime compensation to Account Managers who work in excess of forty (40) hours per week and/or eight (8) hours per day;

b) Whether UPS and UPS Freight have violated and continue to violate California Labor Code §§ 226 and 1174 by failing to keep accurate records of employees' hours of work and hourly wages and by failing to timely furnish each Account Manager with a statement accurately showing the total number of hours worked and wages earned each pay period;

c) Whether UPS and UPS Freight have violated and continue to violate California Labor Code §§ 201 and 202 by failing to timely pay employees unpaid wages and overtime due upon their separation from employment with the Company;

d) Whether UPS and UPS Freight have violated and continue to violate California Labor Code §§ 226.7 and 512 and I.W.C. Wage Order No. 4-

2001 by failing to provide their employees with statutorily-mandated meal breaks and rest breaks; and

e) Whether UPS and UPS Freight have violated and continue to violate California Business and Professions Code §§ 17200 by their failure to pay legally required overtime compensation, failure to pay all wages earned and due, and failure to timely furnish Account Managers with statements accurately showing their hours worked.

47. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class perform similar duties, which are closely prescribed by the Company. Like all Class Members, Plaintiffs have been injured by UPS' and UPS Freight's common course of conduct denying their Account Managers lawful overtime wages and failing to keep accurate records of hours worked and are entitled to recover damages and associated relief.

48. Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs have retained Counsel competent and experienced in litigating large wage and hour and other employment class actions.

49. Due to the basic uniformity of the Class Members' duties and responsibilities, a class action pursuant to Rule 23 is superior to other available methods for the fair and efficient adjudication of this controversy. Adjudication of individual litigation claims may be prohibitively expensive for individual Class Members, virtually all of whom lack the financial resources to vigorously prosecute a lawsuit against powerful corporations like UPS and UPS Freight.

Moreover, separate adjudication of potentially hundreds of individual actions would impose significant burdens on the resources of both this Court and the public.  Finally, the prosecution of separate actions would create the risk of inconsistent and/or varying adjudications with respect to individual Class Members, establishing incomparable standards of conduct for UPS and UPS Freight, and impairing the rights of the Class Members by disposing of their interests through actions to which they are not parties.

**FIRST CAUSE OF ACTION**
**UNLAWFUL FAILURE TO PAY REQUIRED OVERTIME**
**(FLSA, 29 U.S.C. §§ 207)**

50. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

51. At all relevant times, Defendants UPS and UPS Freight have been and continue to be "employers" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, UPS and UPS Freight have employed and continue to employ Account Managers as "employee[s]" within the meaning of the FLSA.  At all relevant times, Defendants have had gross operating revenues far in excess of $500,000.

52. Throughout the relevant three-year statute of limitations period for willful violations established in 29 U.S.C. § 255, Plaintiffs and the other Account Managers were responsible for promoting the UPS and UPS Freight portfolios by disseminating scripted materials; at no time did they engage in outside sales

within the meaning of the FLSA, 29 U.S.C. § 213, since they never sold anything to UPS or UPS Freight customers and never contracted with UPS or UPS Freight customers for the provision of services.

53. Throughout the relevant three-year statute of limitations period, at no time did Plaintiffs or the other Account Managers assume any managerial or supervisory responsibilities, nor did they contribute to the general business operations of the Company, including its overall marketing plan.  At no time were Plaintiffs or were the other Account Managers granted discretion over matters of significance, including without limitation promotional messages, service pricing, and sales goals.

54. Throughout the relevant three-year statute of limitations period, Plaintiffs and the other Account Managers regularly worked in excess of forty (40) hours per workweek and continue to do so.

55. At all relevant times, Defendants operated under and continue to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay Account Managers overtime compensation at the rates required by the FLSA, 29 U.S.C. § 207.   Through this unlawful course of conduct, Defendants have deprived Plaintiffs and the Class Members of the time and a half rate for work performed in excess of forty (40) hours per workweek to which they were and are entitled.

56. Accordingly, Plaintiffs and the Class Members are entitled to damages in the amounts of their respective unpaid overtime compensation and interest, liquidated (double) damages, reasonable attorneys' fees and costs, injunctive relief, and any other legal and equitable relief the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**UNLAWFUL FAILURE TO PAY REQUIRED OVERTIME**
**(WAGE ORDER NO. 4-2001; LABOR CODE §§ 510, 1194 ET SEQ.)**

57. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

58. Throughout the relevant three-year statute of limitations, Defendants UPS and UPS Freight operated under and continue to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay Account Managers for overtime at the rates required by California Labor Code §§ 510, 1194 et. seq. and Wage Order No. 4-2001. Week in and week out, Plaintiffs and the Class Members routinely work in excess of forty (40) hours per week and eight (8) hours per day. Defendants have failed to compensate their Account Manager employees for these overtime hours.

59. Through this unlawful course of conduct, Defendants have deprived and continue to deprive Plaintiffs and the Class Members of the time and a half rate for work performed in excess of forty (40) hours per workweek and in excess of eight (8) hours per workday to which they were and are entitled.

60. As a result, under Labor Code § 1194, Plaintiffs and the Class Members

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

are entitled to damages in the amount of their respective unpaid overtime compensation plus interest, reasonable attorneys' fees and costs, injunctive relief, and such other legal and equitable relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### UNLAWFUL FAILURE TO FURNISH WAGE STATEMENTS
### (WAGE ORDER NO. 4-2001; LABOR CODE § 226)

61. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

62. Defendants knowingly and intentionally failed to furnish and continue to fail to furnish Plaintiffs and each Class Member with timely, itemized statements that accurately reflect the total number of hours worked and wages earned, as mandated by California Labor Code § 226(a), which requires employers, semi-monthly or at the time of each payment of wages, to furnish each employee with a statement that accurately reflects the total number of hours worked.

63. Plaintiffs and Class Members regularly worked in excess of forty (40) hours per week and eight (8) hours per day.  Defendants failed to accurately document this time or compensate them for this time.  Concurrently, Account Managers employed by UPS and UPS Freight never received timely, itemized statements that reflected the total number of hours worked and wages earned. Plaintiffs' paychecks had no direct and observable correlation to actual hours worked.

64. As a result, UPS and UPS Freight are liable to Plaintiffs and each of the

Class Members for the amounts provided by California Labor Code § 226(e): the greater of actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4000).

65. Plaintiffs and the Class are also entitled to reasonable attorneys' fees and costs pursuant to California Labor Code § 226(e).

### FOURTH CAUSE OF ACTION
### UNLAWFUL FAILURE TO KEEP REQUIRED PAYROLL RECORDS
### (WAGE ORDER NO. 4-2001; LABOR CODE § 226)

66. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

67. Throughout the relevant three-year statute of limitations, UPS and UPS Freight willfully, regularly, and repeatedly failed and continue to fail to make, keep, and preserve accurate time records required by the California Labor Code §§ 226 and 1174, with respect to Account Managers. Plaintiffs and the Class Members regularly and continually worked overtime hours. These hours went undocumented. Defendants do not maintain a time clock, nor have they implemented any other system to record hours worked. Consequently, Defendants were unable to make, keep or preserve accurate payroll records recording the hours worked daily by Account Managers.

68. Through this unlawful course of conduct, Defendants have deprived and continue to deprive Plaintiffs and the Class Members of the records necessary to calculate with precision the overtime compensation due to them.

69. Defendants are liable for a statutory penalty pursuant to the California Labor Code § 226.

70. Plaintiffs and the Class are also entitled to reasonable attorneys' fees and costs pursuant to California Labor Code § 226(e).

**FIFTH CAUSE OF ACTION**
**UNLAWFUL FAILURE TO PROVIDE FULL AND UNINTERRUPTED OFF-DUTY MEAL PERIODS (LABOR CODE §§ 226.7 AND 512, AND WAGE ORDER NO. 4-2001)**

71. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

72. Throughout the relevant three-year statute of limitations, UPS and UPS Freight have operated under and continue to operate under a common policy and plan of failing and refusing to afford Plaintiffs and Class Members at least half-hour meal periods after five and then after ten hours of work in which they were relieved of all duties, as required by I.W.C. Wage Order No. 4-2001 and Labor Code §§ 226.7 and 512.

73. Plaintiffs and Class Members were regularly expected to work during lunch and other meal breaks.  Defendants demanded that Account Managers check emails and voice mails during meal periods.  In addition, they were often

expected to take prospective or current customers out to lunch to further promote Defendants' businesses.

74. UPS and UPS Freight are liable for unpaid wages and statutory penalties pursuant to I.W.C. Wage Order 4-2001 and Labor Code § 226.7.

75. Pursuant to I.W.C. Wage Order 4-2001, Labor Code §§ 226.7 and 512, UPS and UPS Freight are liable for forcing Plaintiffs and Class Members to work during the meal period mandated after five (5) hours of work for one additional hour of pay at the employee's regular rate of compensation for each work day that UPS and UPS Freight failed to provide the first required meal period to each Class Member.

76. Pursuant to I.W.C. Wage Order 4-2001, Labor Code §§ 226.7 and 512, UPS and UPS Freight are further liable for forcing Plaintiffs and Class Members to work during the second meal period mandated after ten hours of work for one additional hour of pay at the employee's regular rate of compensation for each work day that UPS and UPS Freight failed to provide the second required meal period to each Class Member.

77. Plaintiffs and the Class are also entitled to reasonable attorneys' fees and costs pursuant to California Labor Code § 218.5, California Code of Civil Procedure § 1021.5, and/or other applicable law.

### SIXTH CAUSE OF ACTION
### UNLAWFUL FAILURE TO PROVIDE FULL AND UNINTERRUPTED PAID OFF-DUTY REST PERIODS (WAGE ORDER NO. 4-2001; LABOR CODE §§ 226.7)

78. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

79. Plaintiffs and Class Members were regularly compelled to work over a four (4) hour period (or major fraction thereof) without UPS and UPS Freight authorizing and permitting them to take paid ten (10) minute rest periods during which they were relieved of all duties, as required by I.W.C. Wage Order 4-2001 § 12(A) and Labor Code § 226.7.

80. UPS and UPS Freight are liable for unpaid wages and statutory penalties pursuant to I.W.C. Wage Order 4-2001 and Labor Code § 226.7.

81. Pursuant to I.W.C. Wage Order 4-2001 and Labor Code §§ 226.7(b) and 218, Defendants UPS and UPS Freight are liable for forcing Plaintiffs and Class Members to work during the first required rest period for one additional hour of pay at the employee's regular rate of compensation for each work day that UPS and UPS Freight failed to permit and authorize a first mandated rest period to each Class Member.

82. Defendants UPS and UPS Freight are further liable for forcing Plaintiffs and Class Members to work during the second required rest period for one additional hour of pay at the employee's regular rate of compensation for each

work day that UPS and UPS Freight failed to permit and authorize a second mandated rest period to each Class Member.

83. Defendants UPS and UPS Freight are further liable for forcing Plaintiffs and Class Members to work during the third required rest period for one additional hour of pay at the employee's regular rate of compensation for each work day that UPS and UPS Freight failed to permit and authorize a third mandated rest period to each Class Member.

84. Plaintiffs and the Class are also entitled to reasonable attorneys' fees and costs pursuant to California Labor Code § 218.5, California Code of Civil Procedure § 1021.5, and/or other applicable law.

### SEVENTH CAUSE OF ACTION
### UNLAWFUL FAILURE TO TIMELY PAY WAGES DUE UPON SEPARATION FROM EMPLOYMENT
### (LABOR CODE §§ 201 AND 202)

85. Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

86. Defendants UPS and UPS Freight have operated under and continue to operate under a common policy and plan of failing and refusing to timely pay unpaid wages and overtime owed to Plaintiffs and Class Members whose employment terminated, as required by California Labor Code § 201. As a result of their failure to pay terminated employees all compensation due upon discharge as required by California Labor Code § 201, Defendants are liable for statutory penalties pursuant to California Labor Code §§ 203 and 218.

87. Defendants UPS and UPS Freight have operated under and continue to operate under a common policy and plan of failing and refusing to timely pay unpaid wages and overtime owed to Plaintiffs and Class Members who resigned from their employment within seventy-two (72) hours of their resignation, as required by California Labor Code § 202. As a result of their failure to pay employees who quit all compensation due upon resignation as required by California Labor Code § 202, Defendants are liable for statutory penalties pursuant to California Labor Code §§ 203 and 218.

88. Plaintiffs and the Class are also entitled to reasonable attorneys' fees and costs pursuant to California Labor Code § 218.5, California Code of Civil Procedure § 1021.5, and/or other applicable law.

### EIGHTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (BUS. AND PROF. CODE §§ 17200-17208)

89. Plaintiffs repeat and reallege all the allegations set forth in the foregoing paragraphs.

90. Throughout the relevant four-year statute of limitations period, Defendants UPS and UPS Freight committed the various labor violations described above. Defendants' failure to pay legally required overtime compensation, failure to pay all wages earned and due, and failure to timely furnish Account Managers with statements accurately showing their hours worked, as alleged above, constitute

unlawful, unfair, and/or fraudulent activity prohibited by Business and Professions Code § 17200.

91. As a result of their unlawful, unfair, and/or fraudulent acts, UPS and UPS Freight have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and the Class Members.

92. UPS and UPS Freight should be enjoined from this activity and made to disgorge these ill-gotten gains and restore to Plaintiffs and the Class Members the wrongfully withheld wages to which they are entitled, interest on these wages, and all other injunctive and preventive relief authorized by Business and Professions Code §§ 17202 and 17203.

## VII.  DEMAND FOR JURY TRIAL

93. Pursuant to Fed. R. Civ. P. Rule 38(b), Plaintiffs and the Class hereby demand a jury trial on all triable issues of fact or law.

## VIII.  PRAYER FOR RELIEF

94. WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members they seek to represent in this action, request the following relief:

A. That the Court determine that this action may be maintained as a collective action under 29 U.S.C. § 216(b) and as a class action under the Federal Rules of Civil Procedure Rule 23.

B. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who

are presently, or have been at any time during the statute of limitations period, employed by Defendants UPS and UPS Freight as Account Managers. Such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit for the recovery of withheld overtime compensation;

C. That the Court find that UPS and UPS Freight have violated the overtime provisions of the FLSA, 29 U.S.C. § 207, and the overtime provisions of the California Labor Code §§ 510 and 1194 and Wage Order 4-2001 as to the Plaintiffs and the Class;

D. That the Court find that UPS and UPS Freight have violated the record-keeping provisions of the California Labor Code §§ 226 and 1174 and Wage Order 4-2001 of the Wage Orders as to Plaintiffs and the Class;

E. That the Court find that UPS and UPS Freight have violated California Labor Code § 226 by failing to timely furnish Plaintiffs and the Class Members itemized statements accurately showing the total hours they worked;

F. That the Court find that UPS and UPS Freight have violated California Labor Code §§ 226.7 and 512 and I.W.C. Wage Order No. 4-2001 by failing to provide their Account Managers with statutorily-mandated meal breaks and rest breaks.

G. That the Cout find that UPS and UPS Freight have violated California Labor Code §§ 201 and 202 by failing to timely pay employees unpaid wages and overtime due upon their separation from employment with the Company.

H. That the Court find that UPS and UPS Freight have violated Business and Professions Code § 17200 by failing to pay their Account Managers overtime compensation, by failing to keep proper time records, by failing to timely furnish Account Managers with statements accurately showing their total hours worked, and by failing to provide Account Managers with statutorily-mandated meal breaks and rest breaks;

I. That the Court find that UPS' and UPS Freight's wage and hour violations as described have been willful;

J. That the Court award to Plaintiffs and the Plaintiff Class compensatory and liquidated damages in excess of $100 million for unpaid overtime compensation, including interest, and statutory penalties subject to proof at trial pursuant to 29 U.S.C. § 201 *et seq*. and the supporting United States Department of Labor regulations, and the California Labor Code, and the supporting I.W.C Wage Orders;

K. That the Court, pursuant to Business and Professions Code § 17200-05, order and enjoin UPS and UPS Freight to pay restitution to Plaintiffs and the Class and enjoin UPS and UPS Freight to cease and desist from

unlawful, unfair, and/or fraudulent activities;

L. That the Court enjoin Defendants to cease and desist from their violations of the FLSA described herein and to comply with the FLSA;

M. That Plaintiffs and the Class be awarded reasonable attorneys' fees and costs pursuant to FLSA 29 U.S.C. § 216(b), California Labor Code § 218.5, 226(e), 1194, Code of Civil Procedure § 1021.5, and/or other applicable law; and

N. That the Court award such other and further relief as this Court may deem appropriate.

Dated: November 18, 2009          Sanford Wittels & Heisler, LLP


                                  By:   /s/ David W. Sanford

                                  David W. Sanford (DC Bar 457933)
                                  **SANFORD WITTELS & HEISLER, LLP**
                                  1666 Connecticut Ave NW, Suite 310
                                  Washington, DC 20009
                                  Telephone: (202) 742-7780
                                  Facsimile: (202) 742-7776
                                  dsanford@nydclaw.com

                                  Jeremy Heisler (NY Bar 1653484)
                                  Steven L. Wittels (NY Bar 2004635)
                                  Janette Wipper (DC Bar 467313)
                                  **SANFORD WITTELS & HEISLER, LLP**
                                  950 Third Ave, 10th Floor
                                  New York, NY 10022
                                  Telephone: (646) 723-2947
                                  Facsimile: (646) 723-2948
                                  jheisler@nydclaw.com

1          Edward D. Chapin, Bar No. 053287
      Jill Sullivan, Bar No. 185757
2          Of Counsel, **SANFORD WITTELS & HEISLER,
      LLP**
3          **CHAPIN WHEELER, LLP**
4          550 West C Street, Suite 2000
      San Diego, CA 92101
5          Telephone: (619) 241-4810
6          Facsimile: (619) 955-5318

7

8          *Attorneys for Plaintiffs Laura Meza and*
9          *Alexander Gonzalez and the Plaintiff Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28